Argued and submitted August 17, reversed December 19, 1984

In the Matter of Vincent Gene Waites,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## VINCENT GENE WAITES,
*Appellant.*

(M-80-6; CA A30881)

692 P2d 654

Blair J. Henningsgaard, Astoria, argued the cause for appellant. On the brief were Paula J. Brownhill, and Brownhill & Henningsgaard, Astoria.

Christopher Kent, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were Dave

Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Roy Pulvers, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Appellant challenges his involuntary commitment under ORS 426.130. The issue is whether there is clear and convincing evidence that appellant is mentally ill. We review *de novo, State v. O'Neill,* 274 Or 59, 61, 545 P2d 97 (1976), and reverse.

Sometime in 1983, appellant was released from Dammasch State Hospital after having been involuntarily committed. After his release, he began to receive general assistance payments through Adult and Family Services Division. Those payments ceased on December 17, 1983, and were not to be extended until appellant was re-evaluated by a mental health therapist. He refused to be re-evaluated, and on several occasions visited the AFSD office demanding payment. He threatened his caseworker, Captein, with violence and was verbally abusive. On each occasion, Captein explained that his benefits would not be continued until he was re-evaluated.

On January 4, 1984, appellant met with Captein and Ray Chamberlain, branch manager of AFSD. He again became violent and abusive and hit Captein in the mouth. That day, Captein and Chamberlain initiated mental commitment proceedings. *See* ORS 426.070.

A hearing was held the next day. Appellant testified at the hearing, but on the advice of his attorney refused to answer questions concerning the altercation the day before. His testimony was often incoherent. He testified that he did not believe he was mentally ill and denied hearing voices that told him what to do. He admitted that he had been committed to a mental hospital in 1983 but stated that he was released because there was "nothing wrong."

Captein and Chamberlain also testified at the hearing. Both described appellant's abusive and violent behavior the day before. They stated that appellant seemed unable to comprehend their explanation for the termination of his benefits. Both testified that he repeatedly asserted that some court decision "overrode welfare policy" and entitled him to benefits. Neither man understood what appellant meant by that. Captein testified that he had not seen appellant indulge in any unusual behavior, besides extreme anger and confusion over the termination of his benefits. He mentioned that

appellant sometimes spoke of "laser beam surgery," which Captein did not understand. He also stated that appellant had accused him of following him around.

At the close of the hearing, the two medical examiners appointed by the court, *see* ORS 426.110, stated that there was insufficient information from which to determine whether appellant was mentally ill. Both filed reports with the court. One of them, Carnahan, a mental health professional, made no finding whether appellant had a mental disorder. He found that appellant was a danger to others, but not to himself, and that he was "oriented by 3 spheres (person, place, time); generally cooperative and responsive; angry; some difficulty understanding and responding to question." He noted that, although there was some history of mental disorder, there was insufficient information to make a diagnosis. The other, Dr. Kettlekamp, reported that appellant was "[a]lert, not delusional or hallucinating." He found that appellant was a danger to others, but not to himself, that he did not have a mental disorder, and that there was no need for treatment.

The court then made the following finding:

"Well, as I understand the law, it's the function of the examiners to make a recommendation to the court. I — in this case I have no recommendation because of insufficient evidence, and it is skimpy. However, I'm going to go ahead and find that he's a mentally ill person under the statute, and I'm basing that on his demeanor at this hearing, his rather incoherent attitude — well, not attitude — statements that he's made here today, and the fact that it's clear to me that he is a danger to other persons in his present mental state."

ORS 426.005(2) provides:

" 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a)    Dangerous to himself or others; or

"(b)    Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

That a person is mentally ill must be proven by clear and convincing evidence, ORS 426.130; that is, the truth of the facts asserted must be "highly probable." *State v. Fletcher,* 60 Or App 623, 625, 654 P2d 1121 (1982). To find that someone is

a "mentally ill person," it must first be established that a mental disorder exists. *State v. Jepson,* 48 Or App 411, 423, 617 P2d 284 (1980).

■ We conclude that there is not clear and convincing evidence that appellant suffers from a mental disorder. The trial court, after stating that the evidence was "skimpy," rejected the reports of the medical examiners and based its conclusion principally on the demeanor of appellant. Although the court is not required to accept the reports and opinions of medical experts who testify, in this case we conclude that the reports should be given more weight than accorded them by the trial court. The examiners observed the same demeanor as did the trial court and were unable to conclude that appellant had a mental disorder. The trial court did not make findings that described the demeanor of appellant, and we are unable to review that aspect in determining if the commitment order is correct. *See State v. Troupe,* 36 Or App 875, 586 P2d 95 (1978), *rev den* 286 Or 521 (1979) (Gillette, J., concurring).

■ The evidence we are able to glean from the record regarding appellant's somewhat inappropriate responses during the hearing and his aggressive behavior toward the AFSD caseworker is insufficient to establish that he had a mental disorder. In exercising our *de novo* review function we often give deference to the factfinder's conclusions when they are based on the opportunity to observe the demeanor of a party or witness. That deference usually, but not always, involves credibility. In this instance, the demeanor of appellant *was* the principal substantive evidence the court used in finding a key element of the commitment decision. In the light of the fact that the medical examiners, who saw the same things as the trial judge, could not give an opinion, we decline to accord deference to the court's conclusions in this instance.

Reversed.