Argued and submitted May 7, affirmed December 12, 2007

Dea Isis FERGUSON,
a minor,
by and through her mother
and Guardian Ad Litem Teri Ferguson;
Teri Ferguson;
and Shaun Ferguson,
*Plaintiffs-Appellants,*

*and*

Jeremy FERGUSON,
a minor,
by and through his mother
and Guardian Ad Litem Teri Ferguson,
*Plaintiff,*

*v.*

William F. NELSON, D.O.,
*Defendant-Respondent,*

*and*

Kamal KOTAICH
and Kotaich, Inc.,
dba Ninth Street Pharmacy,
*Defendants.*

Lane County Circuit Court
160417745; A130544

174 P3d 620

Marianne Dugan argued the cause and filed the briefs for appellants.

Janet Schroer argued the cause for respondent. With her on the briefs were Marjorie A. Speirs and Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Deits, Judge pro tempore.

ROSENBLUM, J.

**ROSENBLUM, J.**

Plaintiffs appeal a judgment on a jury verdict in favor of defendant. They argue that the trial court erred by denying their motions to amend and to postpone trial, by giving two jury instructions, and by failing to give eight jury instructions. We conclude that the trial court did not abuse its discretion by denying plaintiffs' motions and that the two given instructions to which plaintiffs assign error are not erroneous as a matter of law. We further conclude that the record before us does not permit us to meaningfully review whether the trial court erred by declining to give eight instructions requested by plaintiffs. Accordingly, we affirm.

Plaintiffs brought this lawsuit alleging that William Nelson, a medical doctor who treated their minor daughter Dea, negligently prescribed a medication and failed to make proper referrals and diagnoses.[1] A few months before trial and nearly a year after the complaint was filed, plaintiffs deposed Nelson and learned that he did not authorize the third in a series of prescriptions of Lotrisone, despite the fact that his name appeared as the authorizing physician in his employer PeaceHealth's computer system.

After Nelson's deposition, plaintiffs moved to postpone trial and to amend their complaint to add PeaceHealth and Lori Ellis, a pharmacy technician at PeaceHealth, as defendants. The trial court denied the motions, noting that Uniform Trial Court Rule 7.020(5) provides that "[t]he trial date must be no later than one year from date of filing for civil cases * * * unless good cause is shown," and that it had already been more than a year since the complaint was filed.

At trial, plaintiffs requested several instructions pertaining to the issues surrounding defendant's failure to produce documentation showing that someone other than Nelson authorized the third prescription. Specifically, plaintiffs requested Uniform Civil Jury Instruction (UCJI)

---

[1] Plaintiffs also named a pharmacy and a pharmacist as defendants. Those defendants settled prior to trial, and plaintiffs' claims against them have no bearing on this appeal.

12.01[2] (less satisfactory evidence) and a special instruction regarding the presumptions that arise upon proof that a party has wilfully suppressed evidence (Special Instruction Number 2).[3] The trial court declined to give either instruction.

Plaintiffs similarly requested that the jury be given UCJI 30.01[4] (fault/negligence of employee/agent imputed to employer/principal), UCJI 30.04[5] (respondeat superior), and

---

[2] UCJI 12.01 provides:

### "LESS SATISFACTORY EVIDENCE

"In evaluating the evidence, you may consider the power of each side to produce evidence. If weaker and less satisfactory evidence is offered by either party when it appears that the party could have produced stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."

[3] Plaintiffs requested the following instruction:

### "PLAINTIFF'S [sic] SEPARATE REQUESTED
### INSTRUCTION No. 2 PRESUMPTIONS

"a) The law recognizes that evidence wilfully suppressed would be adverse to the party suppressing it. I instruct you that if you find the plaintiffs have proved that defendants willfully suppressed evidence, then the defendant has the burden of proving that that evidence was not adverse to the defendant.

"b) The law recognizes that the ordinary course of business has been followed. I instruct you that if you find the plaintiffs have proved that the ordinary course of business at PeaceHealth Florence Clinic in 2002 was to have a doctor's authorization for each prescription that is sent to the pharmacy, then the defendant has the burden of proving that the June 26, 2002, prescription for [Dea] was sent without a doctor's authorization."

[4] UCJI 30.01 provides:

### "FAULT/NEGLIGENCE OF EMPLOYEE/AGENT
### IMPUTED TO EMPLOYER/PRINCIPAL

"[Name] was the [employee / agent] of the [plaintiff / defendant] [name]. Any [fault / negligence] of [name] is the [fault / negligence] of the [plaintiff / defendant] [name]."

(Brackets in original.)

[5] UCJI 30.04 provides:

### "RESPONDEAT SUPERIOR

"The [plaintiff / defendant] claims that [name] was the [plaintiff / defendant]'s [agent / employee] and was acting within the scope of [his / her] [authority / employment] at the time involved in this case. The [plaintiff / defendant] denies that [name] [was acting as (his / her) (agent / employee) / was acting within the scope of (his / her) (authority / employment)] at the time involved in this case.

"An [agent / employee] is a person who is authorized to act for and is subject to the control, or right of control, of another person, who is called the [principal / employer]. The acts or omissions of an [agent / employee] within the

three special instructions[6] (Special Instructions Numbers 6, 7, and 8) with the goal of permitting the jury to find Nelson liable for authorizing the third prescription. Plaintiffs contended that Nelson either ratified the act of his apparent agents in prescribing the medicine by looking at Dea's records several months after the third prescription was issued or, alternatively, was liable as a principal/employer

---

scope of the [agent / employee]'s [authority / employment] are to be considered by you as the acts or omissions of the [principal / employer]."

(Brackets in original.)

[6] Plaintiffs requested the following special instructions relating to apparent agency and ratification:

"PLAINTIFF'S [sic] SEPARATE REQUESTED INSTRUCTION No. 6

"If you find that the defendant had undertaken to issue prescriptions to the community and that the plaintiffs reasonably believed that the PeaceHealth staff for processing defendant's prescriptions were employed by the defendant to process those prescriptions, then, in such event, the defendant would be liable for any negligence of the PeaceHealth staff who processed the prescriptions, if you so find."

"PLAINTIFF'S [sic] SEPARATE REQUESTED INSTRUCTION No. 7

"If you find that the defendant had undertaken to issue prescriptions to the community and held out PeaceHealth staff as being employed by the defendant to process those prescriptions, and if you find that the plaintiffs justifiably relied on defendant's holding out PeaceHealth staff in that manner, then the defendant would be liable for any negligence of the PeaceHealth staff who processed the prescriptions, if you so find."

"PLAINTIFF'S [sic] SEPARATE REQUESTED INSTRUCTION No. 8

"With regards to the [third prescription], even if you find that defendant Nelson did not himself initially authorize that prescription, the defendant would be liable for any negligence of the staff who entered that prescription without his prior authorizations, if you find that he 'ratified' that prescription through the following things being true:

"(1) The staff who entered that prescription was either Dr. Nelson's actual agent or his 'apparent' agent [refer back to definition from requested instruction No. 8] [sic];

"(2) That Dr. Nelson knew of the material facts, or was negligent in failing to investigate the material facts;

"(3) and that there was an intent by Dr. Nelson to ratify the staff person's acts.

"In determining whether Dr. Nelson had intent to ratify the staff person's acts, you may infer such an intent if you find that Dr. Nelson was silent or otherwise failed to disavow or repudiate the staff person's acts within a reasonable time after Dr. Nelson knew or should have known of those acts, under such circumstances that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent to the prescription."

for the acts of his agent/employees. The trial court concluded that the evidence did not support the requested instructions.

Plaintiffs also requested a special instruction drafted to permit the jury to find Nelson liable for failing to diagnose Dea's genetic disorder (Special Instruction Number 3).[7] They contended that the instruction was appropriate because of the complaint's allegation that Nelson failed to timely refer Dea to a specialist, and because Nelson argued that Dea's problems were caused by her genetic disorder rather than by negligently prescribed medication. The trial court declined to give that special instruction.

In addition to requesting instructions that were not given, plaintiffs excepted to two instructions that the court did give. Specifically, plaintiffs excepted to the addition of a sentence to UCJI 44.03[8] (professional perfection not required) and to UCJI 44.01[9] (duty of medical professional) in its entirety. Plaintiffs argued that both instructions were outdated, did not comply with Oregon law, and were not supported by the evidence. The trial court disagreed and gave the instructions.

---

[7] Plaintiffs requested the following special instruction regarding Dea's genetic disorder:

"PLAINTIFF'S [sic] SEPARATE REQUESTED INSTRUCTION No. 3

"If you find that complications [Dea] experienced from the zinc deficiency ('acrodermatitis enteropathica,' or AE) were a normal, rather than extraordinary, outcome of the delay in diagnosing and treating that genetic disease; and you find that defendant's negligence was a cause of that delay in diagnosis and treatment, then defendant is liable for the damages from the delay in diagnosing and treating the disease."

[8] UCJI 44.03 provides:

"PROFESSIONAL PERFECTION NOT REQUIRED

"Physicians are not negligent merely because their efforts were unsuccessful. A physician does not guarantee a good result by undertaking to perform a service."

The trial court added that "the care required should be in keeping with dangers apparent or reasonably expected at the time and place in question, and not in the light of aftereffects or hindsight."

[9] UCJI 44.01 provides:

"DUTY OF A MEDICAL PROFESSIONAL

"A physician has the duty to use that degree of care, skill, and diligence which is used by ordinarily careful physicians practicing in the same or similar circumstances in the same or a similar community. A failure to use such care, skill, or diligence is negligence."

The jury returned a verdict for defendant, and plaintiffs appealed. Although the notice of appeal designated "the entire trial court file, all exhibits, the record and transcript of oral proceedings, and the transcript of trial in this matter" as the record on appeal, *see* ORAP 2.05(6), plaintiffs later filed a corrected amended designation narrowing their designation of the transcript of oral proceedings to the following: (1) the transcript of the hearing on plaintiffs' motions to amend and to postpone trial; (2) portions of the testimony of defendant's medical office assistant, Erin Trebolo; (3) portions of defense expert Dr. William Miser's testimony about the standard of care regarding the third prescription;[10] (4) portions of defendant'stestimony regarding his opportunity for knowledge of the third prescription after it was issued; and (5) the entirety of counsel's discussion with the court about jury instructions on two dates.

On appeal, plaintiffs raise 12 assignments of error. In their first and second assignments, plaintiffs contend that the trial court abused its discretion by denying their motion to amend and by denying their motion to postpone trial. We find no abuse of discretion and reject those assignments without further discussion.

■■ In their eleventh and twelfth assignments of error, plaintiffs contend that the trial court erroneously instructed the jury by giving UCJI 40.01 with supplemental language and UCJI 40.03. Reversal on the basis of an improper jury instruction requires a showing that the instruction created an erroneous impression of the law in the jurors' minds that affected the outcome of the case. *Howard v. Waremart, Inc.*, 147 Or App 135, 142-43, 935 P2d 432, *rev den*, 325 Or 491 (1997). Here, we are unable to determine whether the instructions affected the outcome of the case because we do not know the entirety of the evidence that was produced at trial. *See State v. Ness*, 54 Or App 530, 536-37, 635 P2d 1025 (1981), *aff'd*, 294 Or 8, 653 P2d 548 (1982) ("[T]he extent to which an improper jury instruction affects the substantial rights of a party depends heavily upon what evidence was produced at trial. Where * * * the evidence at trial is not in the appellate record, jury instructions will not be reviewed

---

[10] Defendant cross-designated other portions of Miser's testimony.

unless they are improper *per se*."). Because neither instruction was improper *per se*, we reject the eleventh and twelfth assignments of error without further discussion.

Accordingly, we write only to address plaintiffs' third through tenth assignments of error, in each of which they contend that the court abused its discretion by declining to give a proposed jury instruction. Defendant responds that those assignments of error are not subject to meaningful review because plaintiffs failed to designate the jury charge as part of the record on appeal, and because the portions of the trial testimony that plaintiff did designate do not permit us to determine whether plaintiffs' rights were substantially affected by any of the challenged rulings.

■ We agree with defendant that the record before us precludes meaningful appellate review of the failure to give the requested jury instructions. An appellant bears the burden of providing a record sufficient to demonstrate that error occurred. *King City Realty, Inc. v. Sunpace Corp.*, 291 Or 573, 582, 633 P2d 784 (1981) ("It is well established that it is the duty of the appellant to designate and bring to the appellate court such portions of the record of the proceedings before the trial court as are necessary to support and establish his contention that the trial court committed the error of which the appellant complains on appeal.").[11] Our subsequent cases have conformed to that principle. *See, e.g., Richardson v. Fred Meyer, Inc.*, 211 Or App 421, 426, 155 P3d 881 (2007) ("It is axiomatic that an appellant has the responsibility of providing a sufficient record for review of the claims of error."); *Russell v. Nikon, Inc.*, 207 Or App 266, 270, 140 P3d 1179, *adh'd to on recons*, 208 Or App 606, 145 P3d 312 (2006),

---

[11] In *King City Realty*, the Supreme Court also held that "if the respondent * * * contends that any such error was not prejudicial and that additional portions of the record will support such a contention, he must designate and bring before the appellate court any such additional portions of the record." 291 Or at 583. When *King City Realty* was decided, evidentiary error was presumed prejudicial under Oregon law unless a respondent was able to demonstrate a lack of prejudice. *See Elam v. Soares*, 282 Or 93, 103, 577 P2d 1336 (1978). *Elam* was legislatively overruled by the enactment of OEC 103, which states that "[e]vidential error is not presumed to be prejudicial." Because there is no longer a presumption that evidentiary error is prejudicial, the party seeking relief or modification of the judgment bears the burden of ensuring that the appellate record permits us to determine that error occurred and to award the relief that the party seeks. *See York v. Bailey*, 159 Or App 341, 347-48, 976 P2d 1181, *rev den*, 329 Or 287 (1999).

*rev den*, 342 Or 299 (2007) ("As the appellant, plaintiff has the responsibility to furnish this court with a record of the * * * hearing [to which he assigns error].")*; Collins and Collins*, 178 Or App 158, 161, 35 P3d 339 (2001) ("The party asserting a claim of error has the affirmative obligation to provide the appellate court with a record adequate to demonstrate reversible error.")*; York v. Bailey*, 159 Or App 341, 347-48, 976 P2d 1181, *rev den*, 329 Or 287 (1999) ("[T]he party seeking a modification or reversal on the basis of the asserted error will have a burden to ensure that the appellate record permits the court to make the determination necessary to award the relief the party seeks.")*; Ness*, 54 Or App at 536-37 ("Any shortcomings in the record resulting in obstacles to [an appellant's] arguments on appeal must be held strictly against [appellant].")*; H.N.M. Enterprises, Inc. v. Hamilton*, 49 Or App 613, 621 P2d 57 (1980) ("We cannot review this claim of error because the transcript is incomplete.").

■ In this case, plaintiffs failed to designate the transcript of that part of the trial record in which the court actually gave the instructions to the jury; that is, the jury charge itself. Defendants contend that, as a result of that failure, we do not know how the court ultimately instructed the jury. The designated record does, however, include both sides' proposed jury instructions, the transcript of the preinstruction conference with counsel in which the trial court ruled on each of the proposed instructions (with the exception of withholding ruling on the Oral Admissions instruction), as well as the transcript of the post-instruction colloquy with counsel, during the course of which neither counsel raised any new exceptions to the giving of the jury instructions. From our review of those portions of the record, we can discern which instructions were given to the jury in this case and we are comfortable that the trial court instructed the jury in accordance with its rulings at the preinstruction conference.[12]

---

[12] Appellants who assign error to jury instructions without designating the jury charge as part of the record do so at their peril. *See, e.g., Smith v. Terminal Transfer*, 61 Or App 739, 740, 658 P2d 579 (1983). Although we have been able to cobble together sufficient information in this case to figure out to our satisfaction the content of the jury instructions that were actually given by the trial court, we are not masters at jigsaw puzzles and we may not always be able—or willing—to

■     Nevertheless, we have determined that the record is inadequate for review of plaintiffs' third through tenth assignments of error. Reversal is warranted only if the requested instruction both accurately states the law in question and is supported by the evidence when viewed in the light most favorable to the party requesting the instruction. *See State v. Marsh*, 186 Or App 612, 614, 64 P3d 1141 (2003). Here, plaintiffs' *de minimis* designation of the trial testimony prevents us from applying that standard of review. The designated portions of the trial transcript are simply insufficient to allow us to properly assess whether the evidence supports the requested instructions. We briefly address each, in turn.

■     In their third assignment of error, plaintiffs contend that the trial court erred by failing to give UCJI 12.01 (less satisfactory evidence). Plaintiffs argue that they were entitled to that instruction because defendant denied authorizing the third prescription, and they argued to the jury during closing that defendant's failure to produce evidence showing that someone else authorized the prescription should be construed against him.[13] Our review of the limited record before us reveals no basis for that instruction, so we cannot conclude that the trial court erred by declining to give it.

■     We turn to UCJI 30.01 (fourth assignment of error), UCJI 30.04 (fifth assignment of error), and plaintiffs' Special Instructions Numbers 6, 7, and 8 (eighth, ninth, and tenth assignments of error, respectively) (collectively, the agency instructions). Plaintiffs contend that they were entitled to the agency instructions because someone other than defendant authorized the third prescription. We find no evidence in the designated portion of the transcripts that would support such a finding.[14]

---

engage in this process. In short, future appellants should always designate the jury charge portion of the proceedings when assigning error to jury instructions.

   [13] During oral argument, plaintiffs' counsel stated that she presented that contention during her closing argument. As plaintiffs did not designate closing arguments, we are unable to confirm that representation.

   [14] That is not surprising, as plaintiffs refer only to defendant's deposition testimony when discussing defendant's claim that he did not authorize the third prescription. That deposition testimony is not part of the record on appeal.

Plaintiffs also point to the testimony of medical office assistant (MOA) Erin Trebolo in support of the agency instructions.[15] Even if we were to conclude that Trebolo's testimony established that *she* acted as defendant's agent in certain instances, Trebolo was not working at the time the third prescription was authorized. Without knowing who entered the third prescription into the computer system, we cannot know whether that person was acting as defendant's agent or apparent agent. Moreover, even if we were to conclude that the third prescription was entered into the computer system by an MOA,[16] we are not able to conclude that that person was either acting as an agent of defendant, or that plaintiffs believed that to be the case under the doctrine of apparent agency. Thus, again, the record is insufficient to support giving those instructions.

■■ In their sixth assignment of error, plaintiffs argue that the trial court erred by not instructing the jury about the presumptions that arise when a party wilfully suppresses evidence (Special Instruction Number 2). The designated record, however, does not contain any evidence to support a finding that Nelson wilfully suppressed evidence about the third prescription. Similarly, plaintiffs' seventh assignment of

---

[15] Trebolo's testimony contains evidence that a medical office assistant works under a doctor, including by taking direction about entering prescriptions into a computer system; that Trebolo worked with defendant at certain times while he was treating Dea, but not when the third prescription was authorized; that she checks what medications a patient is taking at the beginning of each office visit; that defendant reviews any questions she has about medications when they are working together; that the third prescription was not issued with a direction for frequency of use, which is unusual; that certain drugs require prior doctor approval before a pharmacy will dispense them; that Dea's prescriptions of Lortisone were entered by "[t]hree different staff persons on behalf of the doctors"; that Dr. Pearson authorized a prescription for another medication while he was on call for defendant; that the computer system can detect duplicate prescriptions and patient allergies; that sometimes there are delays in refilling prescriptions; and that defendant gave a late dictation of an office visit for Dea, even though the paper chart could not be found, in which he omitted certain facts about another medication that Trebolo would expect to see included. She also described the process for issuing a new prescription and refilling a prescription, including the practice of obtaining the treating physician's approval for refill requests.

[16] To do so on this record would be pure speculation. Trebolo testified that both doctors and MOAs have access to the computer system and that Dea's grandmother, also an employee of PeaceHealth, refilled at least one of Dea's prescriptions. There is no evidence from which we can discern how the third prescription was entered.

error concerns the trial court's failure to instruct the jury that a finding of negligence could be based on defendant's failure to timely diagnose a certain genetic disorder (Special Instruction Number 3), but we are unable to locate anything in the designated record that would support such a finding. The record before us does not establish that Dea suffers from a particular genetic disorder and, if so, when it was diagnosed, or who diagnosed it, let alone evidence that Nelson breached the standard of care.[17]

We conclude that the designated record does not permit us to adequately evaluate plaintiffs' third through tenth assignments of error, and we decline to review them on that basis. ORS 19.365(5) ("If the record on appeal is not sufficient to allow the appellate court to review an assignment of error, the court may decline to review the assignment of error * * *."). Plaintiffs argue that we may not exercise our discretion under ORS 19.365(5) in this case. To support that argument, plaintiffs rely on *State v. Culbertson*, in which we held that a defendant's failure to designate additional portions of the record "is, in effect, a stipulation that the portion of the record designated by appellant is sufficient." 29 Or App 363, 366-67, 563 P2d 1224 (1977) (explaining that the prior version of ORS 19.250 "gives to respondent the responsibility and authority to designate additional portions of the record as respondent deems necessary"); *see also City of Eugene v. Monaco*, 171 Or App 681, 17 P3d 544 (2000), *rev den*, 332 Or 240 (2001).

Plaintiffs' reliance on *Culbertson* is unavailing. That case was decided prior to the Supreme Court's ruling in *King City Realty,* that an appellant alone bears the burden of designating a record sufficient to demonstrate that error occurred. Thus, if *Culbertson* stands for the principle that a respondent who does not file a cross-designation of record may not be heard to complain that the designated record is insufficient, that principle did not survive *King City Realty*. Plaintiffs' reliance on *Monaco* is similarly misplaced, as that case involved an entirely distinct principle not at issue here,

---

[17] Miser testified only that "they" "were able to diagnose[ ] an extremely rare condition that occurs that none of us as family physicians in our lifetime would ever even see or hear about."

namely, who bears the burden of establishing that an error was (or was not) harmless. 171 Or App at 690. We need not consider the prejudicial effect of an error that we cannot determine occurred.

It was plaintiffs' burden to demonstrate that the trial court erred by declining to give the requested instructions. By failing to designate essential portions of the record, they failed to carry that burden.

Affirmed.