LAGESEN, J., dissenting.
I agree that the evidence presented at the hearing is insufficient to support appellant's commitment on the *735 ground that he was unable to meet his basic needs. However, I respectfully dissent from the decision to reverse the trial court's decision to commit appellant on the ground that he was dangerous to others. I do so because the appellate record is inadequate to allow for meaningful appellate review of appellant's claim that the trial court erred in determining that appellant's *1039 mental disorder made him dangerous to others, in the absence of a decision to review de novo .
The trial court explicitly based its determination that appellant posed a danger to others on appellant's conduct in the courtroom:
"In any event, I find here today that due to the, the State has proved to me by clear and convincing evidence that due to his mental disorder, he is unable to control his behavior at this point in time such that he poses a danger to others. I don't know much about the underlying criminal activity so I really can't rely upon that as, as part of being a danger to others, but simply by his presentation in Court here today I think was sufficient for me to have, to meet the State's burden."
But apart from general characterizations of that conduct as "very hostile," "very, very agitated," "very aggressive, agitated, out of control," and unable to "tolerate being in our presence," the court made no findings as to what, specifically, the conduct was. Likewise, neither appellant's lawyer nor the state's lawyer made a record of what that conduct was. As a result, as appellant candidly admits, "[t]he paper record admittedly may not capture the full contours of appellant's behavior at the hearing, e.g. , tone, volume, body movement."
Absent a decision to review de novo , that admitted shortcoming in the record on appeal precludes review of the trial court's determination that appellant's courtroom conduct demonstrated that he was dangerous to others.[1]
*736 Under our longstanding case law, an appellant bears the burden of providing us with a record that allows for meaningful review of the challenged trial court decisions. See, e.g. , Ferguson v. Nelson , 216 Or.App. 541, 549-50, 174 P.3d 620 (2007) ; Schwartzkopf v. Shannon the Cannon's Window , 166 Or.App. 466, 471, 998 P.2d 244 (2000) (plaintiff, as the appellant, bore "the burden of demonstrating that the trial court committed reversible error in ruling as it did"). Where the record is inadequate for meaningful review of an assigned error, we must reject that assignment of error. See id . ; see also ORS 19.365(5) ("If the record on appeal is not sufficient to allow the appellate court to review an assignment of error, the appellate court may decline to review the assignment of error and may dismiss the appeal if there are no other assignments of error that may be reviewed."). We must do so because, in such circumstances, we lack a sufficient basis to determine whether or not a trial court's ruling is erroneous.[2]
*1040 That is the case here. In the end, the record does not disclose what appellant did that day in the courtroom. Did he stand up from his chair and lunge or punch at a *737 witness or lawyer in a way that made it clear to everyone present that, absent the restraints, appellant would have physically assaulted another person? Or was appellant simply fidgety, impolite, and verbally hostile? The trial court's general description of appellant's conduct as very agitated, hostile, and aggressive is broad enough to capture a wide range of conduct. Some of the conduct that reasonably could be encompassed in the trial court's description would be sufficient to show that appellant presents a danger to others, but other conduct would not be. Because we do not know the "full extent" of appellant's conduct, we are not in a position to say one way or another whether the trial court's decision was correct or erroneous.
In concluding otherwise, the majority opinion reasons that "[t]he record contains no evidence that appellant committed an act of physical aggression at any time relevant to the commitment proceeding, nor is there record evidence that he explicitly threatened to commit an act of violence." 289 Or.App. at 731, 410 P.3d at 1037. The problem with that reasoning is that the trial court determined that appellant's conduct at the hearing constituted exactly that type of evidence. That appellant-the party bearing the burden of demonstrating error by the trial court-failed to make an adequate record of what transpired at the hearing to allow for meaningful appellate review does not mean that appellant's conduct at the hearing was legally insufficient to support the trial court's commitment decision. It just means that we are not in a position to evaluate, meaningfully, the correctness of the trial court's assessment of appellant's dangerousness based on its direct observations of appellant's conduct.[3] That *738 requires us to affirm absent a decision to "try the cause anew upon the record" under ORS 19.415.
The majority opinion also reasons that the record permits review of the trial court's assessment of appellant's dangerousness because a "logical inference" can be drawn from statements by the examiner that appellant was not physically aggressive. 289 Or.App. at 732 n. 2, 410 P.3d at 1037 n. 2. But when we have not decided to sit as factfinders ourselves, it is not our function to draw that sort of inference when reviewing a trial court's decision that the information presented to it, including the person's courtroom conduct, establishes that, at the time of the hearing, the person's mental illness made the person dangerous in a way that allows for civil commitment. To meaningfully review a civil commitment decision based on courtroom conduct, we must be supplied with a narrative description of what the conduct encompassed. Otherwise, we are left to guess whether the commitment decision was right or wrong.
Because I would conclude that appellant's challenge to the trial court's determination that he presented a danger to others does not provide a basis for reversal, I consider appellant's other claimed basis for reversal: that the trial court forced him to testify in violation of his right against self-incrimination under the Fifth Amendment to the United States Constitution. I would conclude that that claim fails because, as the state points out, the trial court did not order appellant to answer any questions after he appeared to *1041 assert the privilege.[4] As a result, assuming that appellant invoked the Fifth Amendment privilege, his rights were not violated because he was never compelled to testify against himself.
For these reasons, I respectfully dissent from the decision to reverse the trial court's commitment decision.

Were we to review de novo , we could decide for ourselves whether appellant's mental disorder made him a danger to others at the time of the hearing, giving whatever weight we deemed appropriate to the trial court's unreviewable finding based on appellant's in-court behavior; that is how we decided civil commitment cases with similar record issues when de novo review was mandatory in all such cases. See State v. Watkins , 35 Or.App. 87, 89, 581 P.2d 90 (1978) (according "substantial weight" to the trial court's determination that the appellant's in-court presentation was "a pretty scary thing" and determining on de novo review that the appellant was dangerous to others); State v. Waites , 71 Or.App. 366, 369-70, 692 P.2d 654 (1984) (declining to give substantial weight to trial court's unreviewable demeanor-based determination that the appellant was dangerous to others where the two testifying examiners who observed the same courtroom conduct both opined that the appellant was not dangerous). That is because de novo review under ORS 19.415(3) constitutes "review" of a trial court's decision only in the very loose sense that it results in a determination that the trial court's decision should be affirmed or reversed. Under that statute, de novo "review" means that we "try the cause anew upon the record or make one or more factual findings anew upon the record." In essence, we are sitting in the exact same position as the trial court, except instead of hearing from the witnesses in person, we hear from them through paper transcripts, taking courtroom conduct into account to the extent that we are persuaded by it. If we were to "try the cause anew on the record," the deficiencies in the record as to appellant's courtroom conduct would not preclude us from carrying out that function. Instead, the shortcoming would bear on our own decision, sitting as factfinder, about how much weight to give the trial court's opinion that appellant's courtroom conduct showed that he was presently dangerous as a result of his mental illness. See Waites , 71 Or.App. at 369-70, 692 P.2d 654 (illustrating how the Court of Appeals accounts for otherwise unreviewable findings based on courtroom conduct when functioning as a de novo factfinder).

This does not mean that an appellant in similar circumstances will never be able to obtain meaningful review of a commitment decision based on in-court conduct. Even if an appellant fails to make a record adequate for appellate review at the commitment hearing itself, an appellant may work with the state to submit an agreed narrative statement of the factual basis for the commitment decision, so as to permit meaningful review of the decision. ORS 19.380.

In fact, we have long held that, even on de novo review under a "beyond a reasonable doubt" standard of proof, we generally should afford great weight to commitment decisions based on the trial court's firsthand observations of the appellant. As we observed in Watkins :
"Our review of civil commitment orders is de novo . However, where observation of witnesses is essential to resolution of factual issues, as is often true in civil commitment hearings, we accord substantial weight to the trial court's findings based on such observation. In this case, the trial judge stated that appellant's 'rather threatening tone today is a pretty scary thing.' Considering all the testimony and the trial judge's characterization of it, we have no reasonable doubt that appellant was dangerous to others at the time of the hearing."
35 Or.App. at 89, 581 P.2d 90 (citations omitted).

I say "appeared" because although appellant used the words "I plead the Fifth" at the hearing, it is not clear the extent to which appellant apprehended the proceeding, or what he was saying. Although some of appellant's statements suggest that he was cognizant of his surroundings and the nature of the proceedings, other of appellant's statements suggest that might not have been the case. Appellant's lawyer never suggested to the court that appellant had a basis for invoking the Fifth Amendment privilege, or requested that the court determine whether appellant had grounds for invoking.